RECORD NO. 12-1832

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

SONS OF CONFEDERATE VETERANS, VIRGINIA DIVISION,

*Plaintiff-Appellant,*

v.

CITY OF LEXINGTON, VIRGINIA, MARILYN E. ALEXANDER, DAVID COX, MIMI ELROD, T. JON ELLESTAD, BOB LERA, GEORGE R. PRYDE, CHARLES SMITH and MARY P. HARVEY-HALSETH,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA AT ROANOKE

### RESPONSE BRIEF OF APPELLEES

Jeremy E. Carroll
Paul G. Beers
GLENN, FELDMANN, DARBY & GOODLATTE
P.O. Box 2887
Roanoke, Virginia 24001-2887
(540) 224-8000 Telephone
(540) 224-8050 Facsimile
jcarroll@gfdg.com
pbeers@gfdg.com

*Counsel for Appellees*                    September 24, 2012

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>12-1832</u>         Caption:  <u>Sons of Confederate Veterans, Virginia Division v. City of Lexington</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>City of Lexington, Virginia</u>
(name of party/amicus)

_____

who is _____<u>appellee</u>_____, makes the following disclosure:
       (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
****************************

I certify that on _____ 7/13/12 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Thomas E. Strelka
Strickland, Diviney and Strelka
P. O. Box 2866
Roanoke, VA 24001

_____ /s/ Jeremy E. Carroll _____          _____ 7/13/12 _____
            (signature)                                    (date)

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. 12-1832        Caption:  Sons of Confederate Veterans, Virginia Division v. City of Lexington

Pursuant to FRAP 26.1 and Local Rule 26.1,

Marilyn E. Alexander
(name of party/amicus)


who is _____appellee_____, makes the following disclosure:
          (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
**************************

I certify that on _____7/13/12_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Thomas E. Strelka
Strickland, Diviney and Strelka
P. O. Box 2866
Roanoke, VA 24001


/s/ Jeremy E. Carroll                               7/13/12
_____                      _____
       (signature)                                   (date)

- 2 -

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>12-1832</u>    Caption: <u>Sons of Confederate Veterans, Virginia Division v. City of Lexington</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>David Cox</u>
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?  ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
       financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
       If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
       If yes, identify any publicly held member whose stock or equity value could be affected
       substantially by the outcome of the proceeding or whose claims the trade association is
       pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
       If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
**************************

I certify that on _____7/13/12_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Thomas E. Strelka
Strickland, Diviney and Strelka
P. O. Box 2866
Roanoke, VA 24001

_____/s/ Jeremy E. Carroll_____          _____7/13/12_____
              (signature)                                    (date)

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>12-1832</u>          Caption: <u>Sons of Confederate Veterans, Virginia Division v. City of Lexington</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Mimi Elrod</u>
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                        ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                          ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**************************

I certify that on _____7/13/12_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Thomas E. Strelka
Strickland, Diviney and Strelka
P. O. Box 2866
Roanoke, VA 24001

_____/s/ Jeremy E. Carroll_____          _____7/13/12_____
(signature)                                                    (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. __12-1832__    Caption: __Sons of Confederate Veterans, Virginia Division v. City of Lexington__

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Mary P. Harvey-Halseth_____
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
            (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?  ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
**************************

I certify that on _____7/13/12_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Thomas E. Strelka
Strickland, Diviney and Strelka
P. O. Box 2866
Roanoke, VA 24001

_____/s/ Jeremy E. Carroll_____                    _____7/13/12_____
        (signature)                                        (date)

11/17/2011
SCC

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>12-1832</u>          Caption: <u>Sons of Confederate Veterans, Virginia Division v. City of Lexington</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Bob Lera</u>
(name of party/amicus)

_____

who is _____<u>appellee</u>_____, makes the following disclosure:
          (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                            ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
****************************

I certify that on _____7/13/12_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Thomas E. Strelka
Strickland, Diviney and Strelka
P. O. Box 2866
Roanoke, VA 24001

_/s/ Jeremy E. Carroll_____          _____7/13/12_____
        (signature)                              (date)

- 2 -

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than
one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or
mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici
curiae are required to file disclosure statements.  Counsel has a continuing duty to update this
information.

No. <u>12-1832</u>        Caption: <u>Sons of Confederate Veterans, Virginia Division v. City of Lexington</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>George R. Pryde</u>
(name of party/amicus)

_____

who is _____<u>appellee</u>_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                      ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                           ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
**************************

I certify that on _____7/13/12_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Thomas E. Strelka
Strickland, Diviney and Strelka
P. O. Box 2866
Roanoke, VA 24001

/s/ Jeremy E. Carroll                                    7/13/12
_____                        _____
        (signature)                                      (date)

- 2 -

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. __12-1832__          Caption: __Sons of Confederate Veterans, Virginia Division v. City of Lexington__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Charles Smith__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
**************************

I certify that on _____7/13/12_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Thomas E. Strelka
Strickland, Diviney and Strelka
P. O. Box 2866
Roanoke, VA 24001

| /s/ Jeremy E. Carroll | 7/13/12 |
|---|---|
| (signature) | (date) |

11/17/2011
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. <u>12-1832</u>    Caption: <u>Sons of Confederate Veterans, Virginia Division v. City of Lexington</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>T. Jon Ellestad</u>
(name of party/amicus)

who is _____<u>appellee</u>_____, makes the following disclosure:
    (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?  ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
*****************************

I certify that on _____7/13/12_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Thomas E. Strelka
Strickland, Diviney and Strelka
P. O. Box 2866
Roanoke, VA 24001

_/s/ Jeremy E. Carroll_____               ___7/13/12_____
     (signature)                                    (date)

- 2 -

11/17/2011
SCC

# TABLE OF CONTENTS

Table of Authorities ................................................................................iv

Statement of Jurisdiction..........................................................................1

Statement of the Issues.............................................................................1

    1.    Whether the district court correctly held that the City's facially neutral flag ordinance does not violate SCV's right to free speech under the First Amendment to the United States Constitution?..............1

    2.    Whether the district court correctly held that the City's facially neutral flag ordinance does not violate the district court's 1993 Consent Decree?......................................................................................1

Statement of the Case..............................................................................1

Statement of Facts....................................................................................4

    The Prior Action ...............................................................................4

    The Flag Ordinance and the Pending Appeal...................................6

Summary of Argument.............................................................................7

Argument..................................................................................................9

Standard of Review..................................................................................9

Discussion of Issues...............................................................................10

    I.    THE DISTRICT COURT CORRECTLY HELD THAT THE CITY'S FACIALLY NEUTRAL FLAG ORDINANCE DOES NOT VIOLATE SCV'S RIGHT TO FREE SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION...............................................................................10

i

A.    Because The Flags A City Chooses To Fly From Its Flag Standards Constitute Government Speech, The Flag Ordinance Is Exempt From First Amendment Scrutiny As A Matter of Law .............................................................. 11

    1.    Government Speech Is Exempt From Scrutiny Under The First Amendment To The United States Constitution...................................................... 11

    2.    The City Has The Right To Speak For Itself, To Choose What Messages It Wants to Convey, And To Choose To Exclude Messages.................................. 12

    3.    SCV's Allegations Establish That The City's Choice Of Flags To Be Flown From City-Owned Flag Standards Is Government Speech........................... 19

        a.    Establishment And Control Of The City's Messages Prior To Enactment Of The Flag Ordinance ............................................................ 19

        b.    Establishment And Control Of The City's Messages Since Enactment Of The Flag Ordinance ............................................................ 21

B.    Even If The Flag Standards Were Not Platforms For Government Speech, Dismissal Should Be Affirmed Because The Flag Standards Are, At Most, Nonpublic Fora And The Flag Ordinance Is Reasonable And Viewpoint Neutral.................................................... 24

C.    Even If The Flag Standards Were Public Fora Prior To Enactment Of the Flag Ordinance, The City Constitutionally Closed Those Fora ......................... 34

II.    THE DISTRICT COURT CORRECTLY HELD THAT THE CITY'S FACIALLY NEUTRAL FLAG ORDINANCE DOES NOT VIOLATE THE DISTRICT COURT'S 1993 CONSENT DECREE .......................................................... 44

Conclusion ...........................................................................................49

Certificate of Compliance with Rule 28.1(e) or 32(a)

Certificate of Service

# TABLE OF AUTHORITIES

## Cases

ACLU v. Mote,
    423 F.3d 438 (4th Cir. 2005) .................................................. 24-25, 28

Act-Up v. Walp,
    755 F. Supp. 1281 (M.D. Pa. 1991) ............................................ 41-42

American Legion Post 7 of Durham, N.C. v. City of Durham,
    239 F.3d 601 (4th Cir. 2001) ......................................................21

Arizona v. California,
    283 U.S. 423 (1931)..................................................................37

Arkansas Educational Television Comm'n v. Forbes,
    523 U.S. 666 (1998).................................................... 26, 27-28, 29

Ashcraft v. Conoco, Inc.,
    218 F.3d 288 (4th Cir. 2000) ......................................................44

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)........................................................... 9, 10, 44

Bailey v. Dart Container Corp.,
    292 F.3d 1360 (Fed. Cir. 2002) ...............................................8 n.1

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)........................................................... 9, 10, 44

Child Evangelism Fellowship of Maryland, Inc. v. Montgomery County
    Public Schools,
    457 F.3d 376 (4th Cir. 2006) ................................................passim

Church of the Lukumi Babalu v. City of Hialeah,
    508 U.S. 520 (1993)..................................................................43

iv

Cornelius v. NAACP Legal Defense & Educ. Fund,
    473 U.S. 788 (1985) ........................................................ 30, 33, 34, 35

Crawford v. Board of Educ. of City of Los Angeles,
    458 U.S. 527 (1982) .............................................................. 43

Currier v. Potter,
    379 F.3d 716 (9th Cir. 2004) ................................................ 33, 35

DiLoreto v. Downey Unified School Dist. Board Educ.,
    196 F.3d 958 (9th Cir. 1999) ................................................ 31, 35

Goulart v. Meadows,
    345 F.3d 239 (4th Cir. 2003) ........................................ 25, 28, 29, 33

Griffin v. Department of Veterans Affairs,
    274 F.3d at 818 (4th Cir. 2001) ............................................ 23, 30, 31

Griffin v. Secretary of Veterans Affairs,
    288 F.3d 1309 (Fed. Cir. 2002) ..................................... 13, 16, 21, 24

Grossbaum v. Indianapolis-Marion Co. Bldg. Auth.,
    100 F.3d 1287 (7th Cir. 1996) .......................................... 38, 41, 43

Heffron v. International Society for Krishna Consciousness,
    452 U.S. 640 (1981) ............................................................... 31

Hill v. Colorado,
    530 U.S. 703 (2000) ......................................................... 37-38, 39

Illinois Dunesland Preservation Society v. Illinois Dep't of
    Natural Resources,
    584 F.3d 719 (7th Cir. 2009) .......................................... passim

Johanns v. Livestock Marketing Ass'n,
    544 U.S. 550 (2005) ....................................................... 11, 14, 15, 19

Joyner v. Williams,
    477 F.2d 456 (4th Cir. 1973) ................................................ 42

JTH Tax, Inc. v. H&R Block E. Tax Servs.,
    359 F.3d 699 (4th Cir. 2004) ..........................................................................44

Kensington Volunteer Fire Department, Inc. v. Montgomery County,
    684 F.3d 462 (4th Cir. 2012) ............................................................ 36-37, 42

Lefemine v. Wideman,
    672 F.3d 292 (4th Cir. 2012) ...................................................................45, 47

Make the Road by Walking, Inc. v. Turner,
    378 F.3d 133 (2d Cir. 2004) ..........................................................................35

McCray v. United States,
    195 U.S. 27 (1904)..........................................................................................37

Missouri Knights of the Ku Klux Klan v. Kansas City, Missouri,
    723 F. Supp. 1347 (W.D. Mo. 1989) .............................................................42

Occupy Columbia v. Haley,
    2011 U.S. Dist. LEXIS 147630, 2011 WL 6698990
    (D.S.C. Dec. 22. 2011) (unpublished)............................................................40

Page v. Lexington County School District One,
    531 F.3d 275 (4th Cir. 2008) ................................................................*passim*

Perry Educ. Ass'n v. Perry Local Educators' Ass'n,
    460 U.S. 37 (1983)..............................................................26, 33, 34, 35

Pleasant Grove City v. Summum,
    555 U.S. 460 (2009).....................................................................*passim*

Ridley v. Mass. Bay Transp. Auth.,
    390 F.3d 65 (1st Cir. 2004)...................................................................... 34-35

Robinson v. Am. Honda Motor Corp., Inc.,
    551 F.3d 218 (4th Cir. 2009) ..........................................................................9

Rock for Life – UMBC v. Hrabowski,
    643 F.Supp.2d 729 (D. Md. 2009),
    aff'd, 411 Fed. Appx. 541 (4th Cir. 2010),
    cert. denied, 132 S.Ct. 92 (2011) ........................................................ 31

Rust v. Sullivan,
    500 U.S. 173 (1991) .......................................................................... 13

Santa Monica Food Not Bombs v. City of Santa Monica,
    450 F.3d 1022 (9th Cir. 2006) ...................................................... 34, 38

Shopco Distribution Co. v. Commanding Gen. of Marine Corps Base,
    Camp Lejeune, N.C.
    885 F.2d 167 (4th Cir. 1989) ............................................................ 35

Smith v. City of Middletown,
    2011 U.S. Dist. LEXIS 98601, 2011 WL 3859738
     (D. Conn. September 1, 2011) .......................................................... 39

Sons of Confederate Veterans v. Commissioner of the Virginia
    Dep't of Motor Vehicles,
    288 F.3d 610 (4th Cir. 2002) ..................................................... 11-12, 13

Sons of Confederate Veterans, Virginia Division v. City of Lexington,
    Virginia, et al.,
    Case No. 93-0492-R (W.D. Va.) .......................................................... 4

Students Against Apartheid Coalition v. O'Neil,
    671 F.Supp. 1105 (W.D. Va. 1987)
    aff'd, 838 F.2d 735 (4th Cir. 1988) .................................................... 31

Student Gov't Ass'n v. Bd. of Trustees of Univ. of Massachusetts,
    868 F.2d 473 (1st Cir. 1989) ............................................................. 41

Sutliffe v. Epping School District,
    584 F.3d 314 (1st Cir. 2009) ..................................................... 12, 18, 24

The Gay v. Ohoopee,
        235 F.Supp.2d 1362 (S.D. Ga. 2002),
        aff'd, 90 Fed. Appx. 386 (11th Cir. 2003) ......................................... 39-40, 42

United States v. American Library Ass'n,
        539 U.S. 194 (2003) .................................................................................... 12, 13

United States v. American R. Express Co.,
        265 U.S. 425 (1924) ...................................................................................... 8 n.1

United States v. Bjerke,
        796 F.2d 643 (3d Cir. 1986) ............................................................................ 35

United States v. Kokinda,
        497 U.S. 720 (1990) .................................................................................. 29-30

United States v. O'Brien,
        391 U.S. 367 (1968) ............................................................................ 36, 37, 42

Warren v. Fairfax County,
        196 F.3d 186 (4th Cir. 1999) ................................................................. *passim*

## **Constitutional Provisions**

U.S. Const. Amend. I ................................................................... *passim*

## **Statutes**

28 U.S.C. § 1291 .................................................................................... 1

28 U.S.C. § 1331 .................................................................................... 1

42 U.S.C. § 1983 ........................................................................ 1, 2, 4, 10

## **Rules and Regulations**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ............................. 2, 9, 10, 36

## <u>Other Authorities</u>

§ 420-205 of the Lexington City Code ............................................................2, 6, 44

Laurence H. Tribe, <u>*The Mystery of Motive, Private and Public: Some*</u>
<u>*Notes Inspired by the Problems of Hate Crime and Animal Sacrifice*</u>,
1993 Sup. Ct. Rev. 1, 28-29 .......................................................................................41

## STATEMENT OF JURISDICTION

The Sons of Confederate Veterans, Virginia Division ("SCV"), brings this action pursuant to 42 U.S.C. § 1983 against the City of Lexington and various members of the City's government (collectively "the City"). (App. 5-7). The district court had original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. The district court entered a final order granting the defendants' motion to dismiss on June 14, 2012. (App. 44). SCV filed a notice of appeal on July 3, 2012. (App. 45-46). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether the district court correctly held that the City's facially neutral flag ordinance does not violate SCV's right to free speech under the First Amendment to the United States Constitution?

2.     Whether the district court correctly held that the City's facially neutral flag ordinance does not violate the district court's 1993 Consent Decree?

## STATEMENT OF THE CASE

SCV challenges a reasonable, facially neutral ordinance that reserves to the City the exclusive right to fly flags from certain City-owned flag standards affixed to light poles in the City ("flag standards" or "flag poles"). The ordinance expressly limits the City to flying only the United States flag, the Virginia flag, and the City flag from those flag standards. (App. 34, 36). SCV objects to the ordinance because

1

SCV wants to compel the City to fly flags of the Confederacy from those flag standards. (App. 36).

SCV filed this action against the City, including several members of City government, pursuant to 42 U.S.C. § 1983. The challenged ordinance was enacted in September 2011. It amended § 420-205.C. of the Lexington City Code. (App. 10 at ¶¶ 27-28 (Complaint), 18-22 (Text of Ordinance)) ("Flag Ordinance"). In Count I, SCV claims that the Flag Ordinance violates the terms of a Consent Decree entered at the conclusion of prior litigation involving some of the same parties. In Count II, SCV claims that the Flag Ordinance violates SCV's First Amendment right to free speech. SCV's claims are based on allegations that the City, in enacting the Flag Ordinance, was motivated by disapproval of the content and/or viewpoint of SCV and the flags SCV preferred to fly from the City-owned flag standards. (App. 12 at ¶ 37; SCV's Opening Brief at 8, 21).

The City filed a Motion to Dismiss SCV's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (App. 23-24). The City argued that its choice of flags to fly from its flag standards constitutes government speech that is exempt from First Amendment scrutiny. (App. 34). Alternatively, assuming *arguendo* the flags were not government speech, the City argued that its flag standards were nonpublic fora prior to enactment of the Flag Ordinance. Because the Flag Ordinance is reasonable and viewpoint neutral, it was a permissible restriction

2

on speech in those nonpublic fora. (App. 34). Finally, even if the flag poles were public fora, the City argued that it properly closed those fora by adopting the facially neutral Flag Ordinance. (App. 34).

After briefing and oral argument, the district court entered its memorandum opinion and order dismissing SCV's Complaint on Flag Day, June 14, 2012. (App. 34-44). The district court noted that the "case seems to have all the hallmarks of one involving government speech". (App. 43 n.6). The court refused to rule on that issue, however, reasoning that it "was unable to say with certainty that the City was expressing its own viewpoint when it first undertook to fly private flags from city-owned flag poles." (App. 43 n.6). The district court also by-passed the City's nonpublic fora argument. It reasoned that the City may have created a public forum by making the flag standards "generally available" to the public. (App. 43 n.6). The district court granted the motion to dismiss because, even assuming a designated public forum existed, the City constitutionally closed that forum to all private parties by adopting a reasonable and facially neutral ordinance. (App. 34-35, 37, 39-41). The district court rejected the argument that it was required to explore legislative motivation where, as here, the challenged ordinance is reasonable, is content and viewpoint neutral, and has no discriminatory effect. (App. 37, 39-43). In any event, even if legislative motive were relevant, the district court also held that SCV's allegations fail to state a plausible claim of improper motive. (App. 42 n.5).

Lastly, acknowledging that its 1993 Consent Decree does not bestow upon SCV any greater rights than are granted by the First Amendment, the district court held that there is no violation of its previous order given that there is no violation of SCV's constitutional rights. (App. 43).

SCV filed its Notice of Appeal on July 3, 2012, (App. 45) and its opening brief on August 22, 2012. SCV does not challenge the district court's determination that the Flag Ordinance was reasonable and facially content and viewpoint neutral. Instead, the main thrust of SCV's specious argument is that the district court was required to explore legislative motivation in order to assess whether the Flag Ordinance was discriminatory. (SCV's Opening Brief at 1, 8, 13-21).

## STATEMENT OF FACTS

The pending appeal is the second action involving SCV and the City of Lexington.

### The Prior Action

In 1993 SCV filed an action under 42 U.S.C. § 1983 against the City and several City officials, <u>Sons of Confederate Veterans, Virginia Division v. City of Lexington, Virginia, et al.</u>, Case No. 93-0492-R (W.D. Va.) ("the Prior Action"). (App. 26-33). As stated in the introductory paragraph of the Consent Decree entered at the conclusion of the Prior Action:

4

> The case arose out of a rededication, on the 100th anniversary of its 1891 dedication, of a statue of Confederate General Thomas J. "Stonewall" Jackson located on his grave in the local cemetery on land owned by the City of Lexington.
>
> Members of the plaintiff organization sought, and alleged that they were forbidden by the defendants, to display the Confederate flag as they marched in the rededication parade or gathered for the rededication ceremonies in the cemetery.

(App. 14).

The question presented in the Prior Action was whether the City had violated SCV's and its members' rights to freedom of expression under the Free Speech Clause of the First Amendment to the federal Constitution and parallel free speech provisions in the Constitution of Virginia. (App. 31 at ¶ 17, 31-32 at ¶ 19). SCV claimed that the City had violated those rights by allegedly prohibiting its members from carrying Confederate flags while they paraded through the streets of downtown Lexington and gathered in a cemetery. (App. 14-15 (Consent Decree), 26-27 at ¶ 1, 29-31 at ¶¶ 7-15 (1993 Complaint)). The Prior Action did not involve any allegations regarding the flying of Confederate flags from City-owned flag standards.

The Prior Action was quickly settled by entry of a Consent Decree, a copy of which was appended to SCV's Complaint. (App. 14-17). Under the Consent Decree the City and its agents are prohibited from denying or abridging the rights of SCV and its members "to wear, carry, display or show, at any government-sponsored or government-controlled place or event which is to any extent given over to private

5

expressive activity, the Confederate flag or other banners, emblems, icons or visual depictions designed to bring into public notice any logo of 'stars and bars' that ever was used as a national or battle flag of the Confederacy." (App. 8 at ¶ 16 (Complaint), 15 at ¶ 1 (Consent Decree)).

<u>The Flag Ordinance and the Pending Appeal</u>

Unlike the Prior Action, the pending controversy does not implicate SCV's or its members' constitutional rights to carry flags on City streets or sidewalks or in City cemeteries or march with the "stars and bars" in commemorative parades. The pending appeal involves the Flag Ordinance, a copy of which was attached to SCV's Complaint (App. 18-22), and whether it violates SCV's alleged right to have its preferred flag flown from City-owned flag standards affixed to light poles in the City.

The Flag Ordinance, which was adopted in September 2011 and amended § 420-205.C. of the Lexington City Code, reserves for the City the exclusive right to fly flags from City-owned flag standards. The Flag Ordinance limits the City to flying only the flags of the United States of America, the Commonwealth of Virginia, and the City of Lexington from those flag standards. The City may fly these three flags only on certain holidays and other designated days. Private groups are not allowed to fly any flags from the City's flag standards at any time. Finally, the Flag Ordinance expressly protects the rights of groups such as SCV or individuals to carry

or display flags in public (or private) places or during public (or private) events. (App. 10 at ¶ 28, 21-22).

Accepting SCV's allegations as true, the City had, prior to the enactment of the Flag Ordinance, agreed to place flags on the City-owned flag standards at the request of certain private organizations. (App. 8-9 at ¶¶ 20-24 (Complaint), 35 (Memorandum Opinion)). Before their flags were raised on City-owned flag standards, the entities requested and received permission from the City. (App. 8-9 at ¶¶ 20-24 (Complaint), 35 (Memorandum Opinion)). The City was responsible for hoisting and taking down the flags. The entities alleged to have received such selective, permission-only access to the City's flag poles are Virginia Military Institute, Washington & Lee University, three fraternities at Washington & Lee University, and SCV. (App. 8-9 at ¶¶ 20-24). The Flag Ordinance affects all of these organizations. The City may no longer fly any of their flags from its flag poles.

## **SUMMARY OF ARGUMENT**

In Count II, SCV claims that enactment of the reasonable, facially content and viewpoint neutral Flag Ordinance violates SCV's free speech rights under the First Amendment to the United States Constitution (App. 12). Three independent bases exist for upholding the district court's dismissal of Count II. Each of these bases,

standing alone, is sufficient grounds to affirm the district court. The court below relied on only one of these three bases for upholding the Flag Ordinance.[1]

First, the claim that the Flag Ordinance violates SCV's free speech rights under the First Amendment fails as a matter of law under the government speech doctrine. Prior to enactment of the Flag Ordinance, the City engaged in government speech when it selected flags to hoist onto its own flag standards. The Flag Ordinance conclusively establishes and controls the messages the City intends to deliver from its flag standards. The selected messages are those conveyed by the national, state, and city flags. Because government speech is exempt from First Amendment constraints, the district court's dismissal should be affirmed.

In the alternative, the selective, permission-only access that allowed a few organizations to have their flags flown from the City's flag standards prior to enactment of the Flag Ordinance created, at most, nonpublic fora. Reasonable, viewpoint neutral restrictions are permitted in nonpublic fora. It is uncontested that the Flag Ordinance is reasonable and facially viewpoint neutral. Therefore, the Flag Ordinance withstands First Amendment scrutiny.

---

[1] Arguments rejected, overlooked, or ignored by the district court may be advanced on appeal without filing a cross-appeal. See United States v. American R. Express Co., 265 U.S. 425, 435 (1924); Bailey v. Dart Container Corp., 292 F.3d 1360, 1362 (Fed. Cir. 2002).

Finally, as the district court held, even if the flag standards constituted public fora, those fora were constitutionally closed by enactment of the facially neutral Flag Ordinance. Legislative motivation is irrelevant to determining the constitutionality of such a facially neutral ordinance. In any event, even if motivation were relevant, SCV's allegations fail to state a plausible claim of improper motive.

As to Count I, the Consent Decree does not grant SCV any greater rights than those afforded by the First Amendment. Because the Flag Ordinance is consistent with the First Amendment, it does not violate the Consent Decree.

## **ARGUMENT**

### **Standard of Review**

"The standard of review for dismissal pursuant to Rule 12(b)(6) is *de novo.*" Robinson v. Am. Honda Motor Corp., Inc., 551 F.3d 218, 222 (4th Cir. 2009) [citation omitted]. "This court will construe factual allegations in the non-moving party's favor and will treat them as true, but the court is not bound by the complaint's legal conclusions." Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id. (citing *Twombly*, 550 U.S. at 556). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 [citations omitted]. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## Discussion of Issues

**I.      THE DISTRICT COURT CORRECTLY HELD THAT THE CITY'S FACIALLY NEUTRAL FLAG ORDINANCE DOES NOT VIOLATE SCV'S RIGHT TO FREE SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION.**

SCV does not cite a single published or unpublished decision which holds that a private entity can compel a municipality to fly the entity's preferred flags from the municipality's flag poles or standards. Nonetheless, SCV advocates an outcome that would prove unworkable and expose municipalities to demands to fly flags of all types. The outcome SCV urges would prompt localities to remove altogether flag poles and standards to avoid Section 1983 claims. Such a drastic outcome is not supported by SCV's arguments and authorities.

A.   **Because The Flags A City Chooses To Fly From Its Flag Standards Constitute Government Speech, The Flag Ordinance Is Exempt From First Amendment Scrutiny As A Matter Of Law.**

This case involves quintessential government speech. It concerns the messages a government chooses to convey from its flag poles. The City has the right, as speaker, to establish and control the messages it prefers to convey from its flag poles. The Flag Ordinance embodies that government speech, establishing and controlling the City's message. Indeed, it is difficult to envision a purer example of government speech than the flags a government chooses to fly from its flag poles.

1.   **Government Speech Is Exempt From Scrutiny Under The First Amendment To The United States Constitution.**

Government speech is not subject to First Amendment scrutiny. Pleasant Grove City v. Summum, 555 U.S. 460, 467 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech.") [citations omitted]; Johanns v. Livestock Marketing Ass'n, 544 U.S. 550, 553 (2005) ("[T]he Government's own speech . . . is exempt from First Amendment scrutiny."); Page v. Lexington County School District One, 531 F.3d 275, 280 (4th Cir. 2008) ("At the outset, we restate what is well established -- that 'the Government's own speech . . . is exempt from First Amendment scrutiny.'") (quoting *Johanns*, 544 U.S. at 553); Sons of Confederate Veterans v. Commissioner of the Virginia Dep't of Motor Vehicles, 288 F.3d 610, 618 (4th Cir. 2002) ("Thus,

11

even ordinarily impermissible viewpoint-based distinctions drawn by the government may be sustained where the government itself speaks or where it uses private speakers to transmit its message.") [citations omitted].

Accordingly, "forum analysis is out of place" in the context of the government speech doctrine. *Summum*, 555 U.S. at 480; see also United States v. American Library Ass'n, 539 U.S. 194, 203-05 (2003) (plurality opinion) (explaining that "public forum principles . . . are out of place in the context of this case," which involved the government speech of a public library); Illinois Dunesland Preservation Society v. Illinois Dep't of Natural Resources, 584 F.3d 719, 724-26 (7th Cir. 2009) (refusing to apply forum analysis to government speech doctrine, even if there were no government speech in the literal sense); Sutliffe v. Epping School District, 584 F.3d 314, 318, 333 (1st Cir. 2009) ("Contrary to plaintiffs' framing of the issue, 'public forum principles . . . are out of place in the context of this [government speech] case.'") (quoting *American Library Ass'n*, 539 U.S. at 205).

### 2. The City Has The Right To Speak For Itself, To Choose What Messages It Wants To Convey, And To Choose To Exclude Messages.

In *Summum* the Court reiterated that the government "has the right to speak for itself. . . . is entitled to say what it wishes, and to select the views that it wants to express." 555 U.S. at 467-68 [internal quotations and citations omitted]. Private citizens have no right to play ventriloquist by compelling public officials to endorse

or lend legitimacy to a particular view. Griffin v. Secretary of Veterans Affairs, 288 F.3d 1309, 1325 (Fed. Cir. 2002) ("Simply because the government opens its mouth to speak does not give every outside individual or group a First Amendment right to play ventriloquist.") [citations omitted]. Similarly, the government need not afford private citizens equal access to the platforms from which the government expresses itself. *American Library Ass'n*, 539 U.S. at 204-05 (applying government speech doctrine to "a public library's exercise of judgment in selecting the material it provides to its patrons."); Rust v. Sullivan, 500 U.S. 173, 194 (1991) (noting government's authority to select and fund speech in a non-neutral way in order to send its own message). The government also need not remain neutral or impartial when it speaks on controversial issues. Child Evangelism Fellowship of Maryland, Inc. v. Montgomery County Public Schools, 457 F.3d 376, 381 n.2 (4th Cir. 2006) ("Of course, when the government alone speaks, it need not remain neutral as to its viewpoint."); *Department of Motor Vehicles*, 288 F.3d at 616-17 ("It is well established that the government can speak for itself. . . . This authority to speak necessarily carries with it the authority to select from among various viewpoints those that the government will express as its own.") [internal quotations and citations omitted].

The leading decision on government speech is the Supreme Court's 2009 opinion in *Summum*. The *Summum* Court held that a city's decision to refuse to place

13

a monument in a public park constituted government speech. 555 U.S. at 464. The

Court applied the government speech doctrine even though a park is a "traditional

public forum." Id. Application of the government speech doctrine was not dependent

on any forum analysis. Id. In determining that the government speech doctrine

applied to the city's decision to reject the offered monument, the Court first

determined that the city was engaged in expressive activity (i.e., the city was the

speaker) even though the monument was designed, financed, and offered free-of-

charge by a private entity. Id. at 470-72. The selectivity exercised by the city

demonstrated that the municipality, rather than the donor, was the entity speaking

through the monument. Id. at 471-72. The Court emphasized the effective control

that the city maintained over the message by exercising final approval authority over

the selection of monuments. Rejection of the Summum monument was government

speech immune from First Amendment challenges, even though the city previously

had accepted the donation of a Ten Commandments monument for display at the

same park. Id. at 472-73 (citing *Johanns*, 544 U.S. at 560-61).

Prior to *Summum*, the United States Court of Appeals for the Fourth Circuit

discussed government speech in *Page*, 531 F.3d at 275. The government defendant in

*Page* was a school district. The superintendent and school board used the district's

website, e-mail system, and newsletter to oppose a school voucher bill backed by the

governor.  Id. at 278-79.  Page, a resident of the county who supported the voucher

14

bill, demanded "*equal access to the distribution system* which has already been provided to those opposing the Governor's initiative." *Page*, 531 F.2d at 279 [emphasis in original]. The superintendent of the school district rejected Page's request. In a letter to Page, the superintendent denied that the school district's use of its communication system to lobby against the bill had ". . . created a right of 'equal access' to our informational distribution system for you to present your views in support of the bill." Id. at 279. Page sought an injunction to compel the school district to provide "equal access to present his viewpoint on school choice in each of the public fora established by the Defendant." Id. The district court, citing the government speech doctrine, granted summary judgment to the school district. Id. at 280.

This Court affirmed. Relying on *Johanns*, this Court enunciated a two-part test for evaluating whether expression is government speech. This test focuses on: "(1) the government's *establishment* of the message, and (2) its *effective control* over the content and dissemination of the message." 531 F.3d at 281 [emphasis in original] (citing *Johanns*, 544 U.S. at 560-62). This Court then held that the school district's editorial control over its website and other communication tools allowed it to establish and control its message. Id. at 282. The Court reached this conclusion even though the school district had used these platforms to communicate messages from private parties. Id. at 279, 282-85.

15

The *Summum* and *Page* Courts are not alone in holding that a government need not grant citizens whose views differ from those of the government equal access to the government's methods of communication. In *Griffin*, 288 F.3d at 1309, for instance, the United States Court of Appeals for the Federal Circuit relied upon the government speech doctrine to reject SCV's challenge to the Secretary of Veterans Affairs' restrictions against flying the Confederate flag at Point Lookout Cemetery, a national cemetery where thousands of Confederate soldiers are buried. The court recognized that the Department of Veterans Affairs flag regulation, as government speech, is not subject to First Amendment constraints.

> . . . We have no doubt that the government engages in speech when it flies its own flags over a national cemetery, and that its choice of which flags to fly may favor one viewpoint over another. Such speech, and such discrimination between competing viewpoints, does not, however, implicate the First Amendment rights of others. The government is entitled to full control over its own speech, whether it speaks with its own voice or enlists private parties to convey its message, and the remedy for dissatisfaction with its choices is political rather than judicial. Thus, the government's decision to fly or not fly a particular flag -- be it that of the Union or the Confederacy -- does not trespass upon the First Amendment.

*Griffin*, 288 F.3d at 1324-25 [internal citations omitted].

In *Illinois Dunesland*, 584 F.3d at 719, a post-*Summum* decision, the plaintiff was a nonprofit entity dedicated to protecting public health and safety at beaches along the shores of Lake Michigan. The defendant state department of natural resources refused the organization's request to place its pamphlets in display racks at

16

entrances to the public beaches. Agency officials kept those government-owned racks supplied with their own pamphlets, which promoted the beaches while downplaying the remnants of asbestos products concealed in the sand. These government pamphlets touted the swimming, hiking and other recreational offerings at or near the lakeside park. Id. at 722. In contrast, the nonprofit entity's pamphlets warned citizens that the apparently pristine beaches were tainted by hazardous asbestos fibers from a dismantled industrial facility. Id. at 721-22. Park officials, who disagreed with the plaintiff's alarmist message, published pamphlets which included "fact sheets" which disclosed but discounted the dangers posed by asbestos in the sand. Id. at 722.

The nonprofit organization sued claiming park officials violated its First Amendment rights by refusing to place the group's asbestos pamphlets in the display racks. The Court held that the choice of materials to include in the display racks conveys a message. Id. at 725. Relying on the government speech doctrine, the Court explained that the First Amendment did not prohibit the government from excluding the plaintiff's pamphlets, which contradicted the message chosen by the park officials. The court held that citizens have no right to use government speech platforms for private expressions of dissent.

> . . . [T]he mere display of that [plaintiff's] pamphlet would give it a legitimacy, a weight, that the defendants are not obliged to acknowledge; it would suggest that the park had little confidence in its denial that there was any real asbestos danger. The display rack would soon be crowded with angry pamphlets by environmental activists, and

17

> rejoinders by park and other state officials. . . . If the plaintiff's conception of freedom of speech prevailed, every clerk responsible for stocking such a display rack would face a potential First Amendment suit by an interest group that wanted to influence government action or public opinion.

Id. at 725.

The United States Court of Appeals for the Seventh Circuit concluded, therefore, that the government's selection of pamphlets to include in its display racks was protected by the government speech doctrine and the government could not be compelled to place plaintiff's pamphlets in those racks. Id. at 724-26. The United States Court of Appeals for the First Circuit reached a similar conclusion in *Sutliffe*. Applying the government speech doctrine and relying on *Summum*, the Court held that a local school district did not violate the First Amendment when its officials advocated approval of a proposed budget in a newsletter and on a website "while denying plaintiffs access to these same communication channels to express their opposing views." 584 F.3d at 318, 329-33. *Sutliffe* and *Illinois Dunesland* emphasized the effective control exercised by each respective government in selecting the message to disseminate over the platform or communications channel at issue. *Sutliffe*, 584 F.3d at 330-31; *Illinois Dunesland*, 584 F.3d at 724-26.

>   3.    **SCV's Allegations Establish That The City's Choice Of Flags To Be Flown From City-Owned Flag Standards Is Government Speech.**

Despite noting that "this case seems to have all the hallmarks of one involving government speech," (App. 43 n.6), the district court reasoned that it could not "say with certainty that the City was expressing its own viewpoint" when it flew private flags from City-owned flag standards prior to the enactment of the Flag Ordinance. (App. 43 n.6). Contrary to the concern noted by the district court, the application of the government speech doctrine to the City's choice of flags is clear. In determining whether the City's choice of flags constitutes government speech this Court should focus on: "(1) the government's *establishment* of the message, and (2) its *effective control* over the content and dissemination of the message." *Page*, 531 F.3d at 281 [emphasis in original] (<u>citing</u> *Johanns*, 544 U.S. at 560-62). The City has established and controlled the messages it delivers from its flag standards, both before and after the enactment of the Flag Ordinance.

>   a.    **Establishment And Control Of The City's Messages Prior To Enactment Of The Flag Ordinance.**

Prior to enactment of the Flag Ordinance, the City engaged in expressive activity every time it flew flags from its standards. SCV recognizes that the City owns the flag standards. (App. 8 at ¶ 18, 9 at ¶ 24). As the owner of the flag standards, the City spoke through placement of flags on those standards. It engaged

in expressive activity when it flew municipal, state and national flags. The City also engaged in expressive activity when it selectively flew flags of certain entities with a long historical affiliation with the City. On each occasion when flags of non-municipal entities were flown from City-owned flag standards, prior approval had to be sought and received from the City. (App. 8-9 at ¶¶ 20-24 (Complaint), 35 (Memorandum Opinion)). The City established and effectively controlled the message through its process of granting permission to non-municipal entities that requested to have their flags flown on the flag standards. Significantly, SCV does not allege that the flag standards were generally opened to the public or that they were accessible without the City's permission. The flags selected by the City to fly from its flag standards reflected the speech of the City, in the same way that the monuments selected by Pleasant Grove City for placement in its parks "are meant to convey and have the effect of conveying a government message . . . ." *Summum*, 555 U.S. at 472; see also *Illinois Dunesland*, 584 F.3d at 725 ("The [*Summum*] Court held that the monument selected by the city was the vehicle of the city's expression, just as playing the national anthem at an official function is government expression even though the anthem was composed by a private person.").

The City conveyed messages of support for Virginia Military Institute, Washington & Lee University, and their respective students when it flew their flags. The messages conveyed by the Confederate flag are less clear. An array of

organizations use the Confederate flag to convey a variety of messages, which at least some citizens of Lexington find offensive. (See App. 9-10 at ¶ 26). Under the government speech doctrine, the City is not required to adopt these mixed-messages. The City is allowed latitude in its selection of symbols, emblems and other messages for its government-controlled communication platforms. Reflecting this broad discretion, no judicial decision stands for the proposition that a private interest group like SCV can compel a city to speak in a particular manner by flying a specific flag.

### b. Establishment And Control Of The City's Messages Since Enactment Of The Flag Ordinance.

The City's establishment and control of the messages it conveys from its flag standards has only increased with the enactment of the Flag Ordinance.

The relevant "message" is the iconography and symbolism woven into the national, state and Lexington flags permitted by the Flag Ordinance. A city which displays a flag expresses a political message. See American Legion Post 7 of Durham, N.C. v. City of Durham, 239 F.3d 601, 607 (4th Cir. 2001); see also Griffin, 288 F.3d at 1324 ("We have no doubt that the government engages in speech when it flies its own flags . . . .").

By enacting and enforcing its Flag Ordinance, the City clearly "establishes" the messages: The only expressive activity allowed from City-owned flag standards will be those conveyed by the municipal, state and national flags. The messages

21

intrinsic to these three, authorized emblems therefore qualify as government speech under the first prong of the two-pronged paradigm articulated by this Court in *Page*. 531 F.3d at 281.

The three flags allowed by the Flag Ordinance also qualify as government speech under the second prong of the two part test. Through the Flag Ordinance the City wields "effective control" over which flag-based messages shall be displayed from its flag standards. In fact, City control is absolute under the Flag Ordinance. No private entity is entitled to place a flag on City-owned flag standards and no flags other than the city, state and national flags may fly from those standards. Indeed, SCV concedes that the Flag Ordinance closed the flag poles altogether to private flags, demonstrating the City's complete control over the messages emanating from the flag standards. (See App. 8; SCV's Opening Brief at 9).

Reduced to its core, SCV's request for injunctive relief is a bid to compel the City to voice the plaintiff's message. SCV asks the Court to force the City to display SCV's preferred flags from City-owned flag standards.  SCV's First Amendment theories are squarely inconsistent with the government speech doctrine. Just as a school board cannot be compelled to post various political messages on a government-owned website, *Page*, 531 F.3d at 286-87, and a state parks department cannot be compelled to include environmental pamphlets in government-owned display racks, *Illinois Dunesland*, 584 F.3d at 725-26, the City cannot be compelled

22

to include the flags of the Confederacy or other sovereigns on City-owned flag standards. When a city allows a private party to fly a flag from the municipality's flag standards, citizens may perceive that the local government endorses the private actor's message. The government speech doctrine protects local governments from unwittingly or impliedly lending support to private groups' views and messages. The municipality is entitled to reserve its means of communication for pristine and unambiguous expressions of its own municipal messages. Griffin v. Department of Veterans Affairs, 274 F.3d 818, 822 (4th Cir. 2001) ("The government is entitled to promote particular messages and to take legitimate and appropriate steps to ensure that its messages [are] neither garbled nor distorted") [internal quotation and citation omitted]; *Illinois Dunesland*, 584 F.3d at 725 ("the mere display of that [plaintiff's] pamphlet would  give it a legitimacy, a weight, that the defendants are not obliged to acknowledge").

SCV's expansive First Amendment theory would lead to absurd results. If the Court were to accept SCV's novel reading of the Free Speech Clause, an infinite number of interest groups would suddenly have standing to compel localities to fly nongovernmental flags from government-controlled flag standards. Organizations dedicated to reviving fascism or white supremacy, for instance, could force the City to fly Nazi swastikas or Ku Klux Klan emblems from City-owned flag standards; organizations dedicated to communism could require the City to fly the hammer and

23

sickle. The government speech doctrine was developed to prevent these types of unmanageable outcomes. *Summum*, 555 U.S. at 480; *Illinois Dunesland*, 584 F.3d at 725-26.

In some cases, drawing the line between government speech and private speech may prove difficult. *Summum*, 555 U.S. at 470. But this is not one of those cases. Messages delivered by email (*Page, Sutliffe*), websites (*Page, Sutliffe*), and display racks in public parks (*Illinois Dunesland*) all easily qualify as government speech. Similarly, monuments in public parks (*Summum*) and flags in national cemeteries (*Griffin*) are government speech. The City's choice of flags to fly from its own flag poles is just as plainly government speech exempt from First Amendment scrutiny. Accordingly, the district court's dismissal of Count II should be affirmed.

**B.    Even If The Flag Standards Were Not Platforms For Government Speech, Dismissal Should Be Affirmed Because The Flag Standards Are, At Most, Nonpublic Fora And The Flag Ordinance Is Reasonable And Viewpoint Neutral.**

Forum analysis would be necessary only if the government speech doctrine were somehow inapplicable to the Flag Ordinance. Even if this Court undertakes a forum analysis, the district court's dismissal should be upheld.

Under a forum analysis, a court first "'must identify the nature of the forum, because the extent to which the Government may limit access depends on whether

24

the forum is public or nonpublic.'"  ACLU v. Mote, 423 F.3d 438, 442-43 (4th Cir. 2005) (quoting Goulart v. Meadows, 345 F.3d 239, 246 (4th Cir. 2003)). Once the court has classified the forum as public or nonpublic, it must ". . . determine whether the justifications for the exclusion satisfy the requisite standard for that forum." Id. at 443 [citation omitted].

Courts generally have recognized "three types of forums in First Amendment cases, traditional public forums, non-public forums, and limited (or designated) public forums." *Mote*, 423 F.3d at 443 (citing Warren v. Fairfax County, 196 F.3d 186, 190-91 (4th Cir. 1999)). More recent cases have drawn distinctions between limited and designated fora, recognizing that the limited public forum is a subset or subtype of the designated public forum. (App. 38 n.2). See *Child Evangelism Fellowship*, 457 F.3d at 382 n.3.

On one end of the forum spectrum are traditional public fora. Traditional public fora are places such as "public streets and parks, which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Summum*, 555 U.S. at 469 [citations and internal quotations omitted].

On the other end of the spectrum are nonpublic fora. Nonpublic fora consist "of public property which is not by tradition or designation a forum for public

communication." *Child Evangelism Fellowship*, 457 F.3d at 381. "[T]he government may retain nonpublic forum status by allowing *selective, permission-only access* to the forum." *Warren*, 196 F.3d at 193 [emphasis added]; see also Arkansas Educational Television Comm'n v. Forbes, 523 U.S. 666, 680 (1998) ("[S]elective access, unsupported by evidence of a purposeful designation for public use, does not create a public forum."); Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 47 (1983) ("[S]elective access does not transform government property into a public forum.").

Designated and limited public fora are hybrids of traditional and nonpublic fora. See *Child Evangelism Fellowship*, 457 F.3d at 382. In *Child Evangelism Fellowship,* this Court first discussed the similarities between designated and limited public fora:

> This type of forum is "created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." It may be of either "a limited or unlimited character." The government cannot create such a forum "by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." The Supreme Court has sometimes referred to these intermediate forums as "designated public" forums, but at other times the Court has used the phrase "limited public" forum to describe this category.

Id. at 382 [citations omitted]. As to differences, this Court noted:

> In a limited public forum, the government creates a channel for a specific or limited type of expression where one did not previously

26

exist. In such a forum, "the State may be justified in reserving [its forum] for certain groups or for the discussion of certain topics," subject only to the limitation that its actions must be viewpoint neutral and reasonable. In a designated public forum, by contrast, the government makes public property (that would not otherwise qualify as a traditional public forum) generally accessible to all speakers. In such a forum, regulations on speech are "subject to the same limitations as that governing a traditional public forum" -- namely, strict scrutiny.

Id. [citations omitted].

SCV alleges that the City flew the flags of a few organizations from City-owned flag standards. (App. 8-9 at ¶¶ 20-24). SCV contends that these bare allegations of limited access to the flag standards by a few, select organizations are sufficient to prove that the City-owned flag standards constituted designated fora prior to enactment of the Flag Ordinance. (App. 12 at ¶ 35 (Complaint), 36-37 (Memorandum Opinion)). In its decision, the district court assumed that SCV's allegations were sufficient to prove the existence of designated fora. (App. 41). The district court's assumption was misplaced. SCV's allegations, as a matter of law, are insufficient to give rise to any plausible claim that the City-owned flag standards were public fora of any type. Viewing the allegations in a light most favorable to SCV, the allegations establish, at most, nonpublic fora.

A municipality does not create a designated public forum merely by granting a handful of groups selective, permission-only access to the site in question. "[S]elective access, unsupported by evidence of a purposeful designation for public

27

use, does not create a public forum." *Forbes*, 523 U.S. at 680. "[T]he government does not create a designated public forum when it does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, obtain permission to use it." Id. at 679 [internal citations and quotations omitted]; see also *Mote*, 423 F.3d at 443 ("[T]he government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse.") [quotation omitted]; *Goulart*, 345 F.3d at 250 ("The government may retain nonpublic forum status by allowing selective, permission-only access to the forum. To remain a nonpublic forum, the granting of such permission must be contingent upon non-ministerial judgments.") [internal quotations omitted].

To create a designated public forum, the government must make the site widely and continuously available to a broad class of speakers:

> . . . To create a forum of this type [i.e., a designated public forum], the government must intend to make the property generally available to a class of speakers. . . . A designated public forum is not created when the government allows selective access for individual speakers rather than general access for a class of speakers.

*Forbes*, 523 U.S. at 679 [internal citations omitted]. Relying on *Forbes*, this Court reached the same conclusion in *Warren*:

> Merely allowing some speech on property that is not a traditional public forum does not automatically create a designated public forum. The Supreme Court recently clarified the distinction. The government

28

> creates a designated public forum when it purposefully makes property "generally available" to a class of speakers. By contrast, the government may retain nonpublic forum status by allowing selective, permission-only access to the forum.

*Warren*, 196 F.3d at 193 [internal citations omitted].

SCV does not allege that the flag standards were generally available to the public. SCV does not allege that the City purposefully designated or opened its flag standards to the general public on a continuous basis. SCV does not allege that the flag standards were ever used without the express permission of the City. SCV alleges only that two preeminent institutions of higher learning, three fraternities associated with one of those universities, and SCV requested and received permission from the City to have their flags flown from City flag standards for a few days a year between 1994 and 2011. (App. 8-9 at ¶¶ 20-24 (Complaint), 35 (Memorandum Opinion)). SCV alleges nothing more than the type of "selective, permission-only access" that this Court recognized in *Goulart* and *Warren* created at most a nonpublic forum.

Because the municipal flag standards were at most nonpublic fora, the Flag Ordinance must be upheld provided it is reasonable and viewpoint neutral. *Forbes*, 523 U.S. at 682; United States v. Kokinda, 497 U.S. 720, 730 (1990) ("'The Government's decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation.'")

29

[emphasis in original] (quoting Cornelius v. NAACP Legal Defense & Educ. Fund, 473 U.S. 788, 808 (1985)); *Griffin*, 274 F.3d at 820 ("Restrictions on speech in [a nonpublic forum] must be both reasonable in light of the purpose for the forum and viewpoint neutral.") (citing *Cornelius*, 473 U.S. at 806); *Warren*, 196 F.3d at 193 ("Restrictions on speech in nonpublic fora must be viewpoint neutral and reasonable . . . .") (citing *Cornelius*, 473 U.S. at 809). This level of judicial scrutiny is deferential. Exclusion of a private speaker is permissible unless the government's decision is plainly arbitrary or irrational. See *Griffin*, 274 F.3d at 822 (describing low level of scrutiny applicable to nonpublic fora as a "deferential test.").[2]

The district court concluded the Flag Ordinance is reasonable and facially content and viewpoint neutral. SCV does not challenge these findings by the district court, choosing instead to focus on the issue of legislative motivation.

As held by the district court, (App. 37, 42-43), the Flag Ordinance is "eminently reasonable". Allowing nongovernmental groups to fly their own flags from City-owned flag standards would lend the approbation of the City to the group's message. This Court has held that it is reasonable for a governmental entity to decline flags that would become "garbled" or "distorted" with governmental messages.

---

[2] A limited public forum is subject to the same level of scrutiny. *Summum*, 555 U.S. at 470; *Child Evangelism Fellowship*, 457 F.3d at 382. Thus, even if the flag standards were deemed to be limited public fora, the reasonable and viewpoint

*Griffin*, 274 F.3d at 822-23. Allowing nongovernmental flags to be flown also would lead to other citizen demands for equal access and misguided First Amendment suits such as the instant action. See DiLoreto v. Downey Unified School Dist. Board Educ., 196 F.3d 958, 969-70 (9th Cir. 1999) (concern about disruption, controversy and litigation reasonable bases for closing forum). The City reasonably decided to limit this nonpublic forum to the approved flags of the federal, state and local governments.

The availability to SCV of alternative means of expression also underscores the reasonableness of the Flag Ordinance. In assessing whether an alleged restriction on speech is reasonable, courts look at whether the plaintiff has alternative means to disseminate its message. "While the alternatives may not be plaintiffs' first choice of expression, 'the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired.'" Students Against Apartheid Coalition v. O'Neil, 671 F.Supp. 1105, 1107-08 (W.D. Va. 1987) (quoting Heffron v. International Society for Krishna Consciousness, 452 U.S. 640, 647 (1981)) aff'd, 838 F.2d 735 (4th Cir. 1988); Rock for Life – UMBC v. Hrabowski, 643 F.Supp.2d 729, 748 (D. Md. 2009), aff'd, 411 Fed. Appx. 541 (4th Cir. 2010), cert. denied, 132 S.Ct. 92 (2011).

---

neutral Flag Ordinance should be upheld and the district court's dismissal of Count II should be affirmed.

31

The flag standards at issue are affixed to light poles that line sidewalks of Main Street in downtown Lexington. SCV is free to carry and display the Confederate flag prominently on these same sidewalks and streets, as both the Consent Decree and the Flag Ordinance make clear. See *Illinois Dunesland*, 584 F.3d at 726 ("It is not as if the denial of rack space had closed off the only good avenue that the plaintiff has for reaching the patrons of the state park with its message. . . . The park authorities cannot impose unreasonable barriers to using open public space to convey ideas and opinions (remember that a park is 'a traditional public forum'), but there has been no showing that they've tried to do this."). Indeed, SCV and its members have exercised their First Amendment rights to parade through the streets of Lexington carrying Confederate flags since enactment of the Flag Ordinance.

The district court also correctly found the Flag Ordinance to be viewpoint and content neutral. (App. 37, 41-42). The Flag Ordinance, on its face, prohibits all non-municipal access to the City's flag poles. It does not discriminate on any viewpoint or content basis. No private entity may attach its flags to City-owned flag standards. By reserving for the government the right to use government-owned flag standards, the Flag Ordinance, at most, draws a distinction based on status – governmental versus nongovernmental flags. Because the Flag Ordinance makes, at most, distinctions based on status rather than on viewpoint, it comports with the Free Speech Clause. In a nonpublic forum, exclusion of a speaker based on the speaker's status, identity, or

subject matter is constitutional. The Supreme Court recognized this principle in upholding the exclusion of union speakers from a nonpublic forum.

> We believe it is more accurate to characterize the access policy as based on the *status* of the respective unions rather than their views. Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property.

*Perry*, 460 U.S. at 49 [emphasis in original]. <u>Accord</u> *Cornelius*, 473 U.S. at 806 ("Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."); *Goulart*, 345 F.3d at 253-54 ("The Supreme Court has repeatedly held that distinctions based on the *status* of the speaker can be a permissible way to limit the scope of the forum. . . . [T]he government may draw permissible status–based distinctions among different classes of speakers in order to preserve the purpose of the forum, even when the proposed uses by those inside the permitted class of speakers and those outside the permitted class of speakers are quite similar.") [emphasis in original]; <u>Currier v. Potter</u>, 379 F.3d 716, 728 (9th Cir. 2004) ("The government may limit the forum to certain groups or subjects – although it may not discriminate on the basis of viewpoint – and may close the fora whenever it wants.") (<u>citing</u> *Perry*, 460 U.S. at 46).

For these reasons, the City's flag standards were, at most, nonpublic fora prior to enactment of the Flag Ordinance. Because the Flag Ordinance is reasonable and viewpoint neutral, the district court's dismissal should be affirmed.

### C. Even If The Flag Standards Were Public Fora Prior To Enactment Of The Flag Ordinance, The City Constitutionally Closed Those Fora.

Even if, as SCV contends, the City's flag standards were designated public fora prior to September 2011, the City exercised its absolute right to close those fora when it enacted the Flag Ordinance. The district court assumed that SCV's allegations were sufficient to establish a designated public forum (App. 41) but nonetheless dismissed this action because "the City has constitutionally closed a designated public forum." (App. 40).

As recognized by the district court (App. 38-39), a designated public forum can be closed. See *Perry*, 460 U.S. at 46 ("[A] state is not required to indefinitely retain the open character of the [designated public forum] . . . ."); *Cornelius*, 473 U.S. at 802 ("Of course, the government 'is not required to indefinitely retain the open character of the facility.'") (quoting *Perry*, 460 U.S. at 46); Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1032 (9th Cir. 2006) ("[A] state is not required to indefinitely retain the open character of the [designated public forum] . . . .") (quoting *Perry*, 460 U.S. at 46); Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 77 (1st Cir. 2004) ("The government is free to

34

change the nature of any nontraditional forum as it wishes.") (citing *Cornelius*, 473 U.S. at 802); *Currier*, 379 F.3d at 728 (noting that the government may close a designated public forum "whenever it wants") (citing *Perry*, 460 U.S. at 46); Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 143 (2d Cir. 2004) ("Furthermore, the government may decide to close a designated public forum.") (citing *Perry*, 460 U.S. at 46); *DiLoreto*, 196 F.3d at 970 ("The government has an inherent right to control its property, which includes the right to close a previously open forum. Closing the forum is a constitutionally permissible solution to the dilemma caused by concerns about providing equal access while avoiding the appearance of government endorsement of religion.") [citations omitted]; Shopco Distribution Co. v. Commanding Gen. of Marine Corps Base, Camp Lejeune, N.C., 885 F.2d 167, 173 (4th Cir. 1989) ("Even assuming *arguendo* that the Commanding General did . . . change Camp Lejeune housing areas from non-public to public forums, he 'is not required to indefinitely retain the open character of the facilit[ies].'" (quoting *Perry*, 460 U.S. at 46); United States v. Bjerke, 796 F.2d 643, 647 (3d Cir. 1986) ("[O]fficials may choose to close such a designated public forum at any time.") (citing *Perry*, 460 U.S. at 46).

SCV argues that the motivation of the members of City Council who enacted the Flag Ordinance must be examined to ascertain why they voted to close these fora. (SCV's Opening Brief at 8, 13-17). SCV contends that an improper motivation can

void a reasonable and facially content and viewpoint neutral ordinance. (App. 37; SCV's Opening Brief at 8, 13-17). As the district court observed (App. 37), SCV is mistaken. Because the Flag Ordinance is reasonable and facially neutral and there is no allegation that it has any discriminatory effect, the motives of the members of City Council are irrelevant.

This Court recently rejected an argument similar to SCV's in <u>Kensington Volunteer Fire Department, Inc. v. Montgomery County</u>, 684 F.3d 462 (4th Cir. 2012). In *Kensington*, a group of local volunteer fire departments sued Montgomery County, Maryland and a number of government officials claiming that plaintiffs' funding had been reduced in retaliation for the firefighters' opposition to certain legislation. <u>Id</u>. at 465. The district court granted the defendants' Rule 12(b)(6) motion to dismiss, "declining to inquire into Defendants' alleged illicit motive behind an otherwise facially valid budgetary enactment . . . ." <u>Id</u>.

Affirming, the Fourth Circuit relied on the Supreme Court's decision in <u>United States v. O'Brien</u>, 391 U.S. 367 (1968). This Court declared: "Confronted with such a facially constitutional budgetary enactment, *O'Brien* instructs that we not strike it down 'on the basis of an alleged illicit legislative motive.'" *Kensington*, 684 F.3d at 468 (<u>quoting</u> *O'Brien*, 391 U.S. at 383). The Court pointed out that it was addressing a "*legislative* action" rather than "*executive* action", and discounted cases cited by the plaintiffs that involved such executive action. <u>Id</u>.

36

[emphasis in original]. The Court also noted that the effect of the legislative action "was not felt by Plaintiffs alone." Id. The present case is virtually identical in that the Flag Ordinance was a legislative action, as opposed to an executive action, and the effect of the Flag Ordinance is felt by all non-municipal entities, particularly those like Washington & Lee University and Virginia Military Institute that previously had requested and received permission to have their flags flown from the City's flag standards.

The *Kensington* Court's analysis is in keeping with the judiciary's traditional unwillingness to explore the motives of elected legislators who vote for (or against) facially constitutional legislative acts. *O'Brien*, for example, involved a First Amendment challenge to a federal statute that penalized the destruction of draft cards. 391 U.S. at 369-70. The Court noted that "[i]nquiries into [legislative] motives or purposes are a hazardous matter," and declined to void a statute that was "constitutional on its face" because of the subjective motivations of some of the legislators who supported the legislative action. Id. at 383-84 (citing McCray v. United States, 195 U.S. 27 (1904) and Arizona v. California, 283 U.S. 423 (1931)); see also Hill v. Colorado, 530 U.S. 703, 724 (2000) ("[T]he contention that a statute [that prohibited individuals from approaching another person within 100 feet of a health care facility for the purpose of 'oral protest, education or counseling'] is 'viewpoint based' simply because its enactment was motivated by

37

the conduct of the partisans on one side of a debate is without support."); Grossbaum v. Indianapolis-Marion Co. Bldg. Auth., 100 F.3d 1287, 1299 (7th Cir. 1996) ("In sum, content-neutral speech regulations in nonpublic fora pass constitutional muster regardless of motive . . . . When a government body acts at a sufficiently high level of generality, there is no need for courts to search the minds of government actors for invidious motives that might indicate unconstitutional discriminatory effect.").

The City's closure of its flag standards to flags associated with private entities is permissible, as illustrated by *Santa Monica*, 450 F.3d 1022. The City of Santa Monica enacted an ordinance which ended its longstanding policy of allowing citizen groups to hang banners from public property during political demonstrations. Under the new ordinance, the only street banners allowed were those related to City-produced events. Citing its own precedent for the proposition that a government may close a designated public forum "whenever it wants," the United States Court of Appeals for the Ninth Circuit found no constitutional infirmity in the new ordinance. Id. at 1031-32 [citation omitted]. "By precluding all private parties from putting up street banners and limiting such 'bannering' to the City itself, the Council has now closed the designated public forum in which appellants sought to exercise their rights," the court reasoned in rejecting the appellants' First Amendment claims. Id.

38

The United States District Court for the District of Connecticut recently addressed the relevance of legislative motivation. Smith v. City of Middletown, 2011 U.S. Dist. LEXIS 98601, 2011 WL 3859738 (D. Conn. September 1, 2011) (unpublished). Middletown's Common Council, its governing body, ended its monthly practice of allowing citizens to comment on non-agenda items, allegedly in an effort to prevent plaintiffs from commenting. The court first determined that a council meeting open to the public is a limited public forum. Id. at *12. The court then upheld the restrictions on public comment as reasonable and viewpoint neutral. Id. at *12-*15. Notably, the court also held that legislative motivations underlying viewpoint neutral rules are irrelevant. Id. at *16-*17 ("However, it is the rules themselves which must be viewpoint-neutral: the motivation for adopting a rule need not be viewpoint-neutral.") (citing Hill, 530 U.S. 703).

The United States District Court for the Southern District of Georgia reached the same conclusion in The Gay v. Ohoopee, 235 F.Supp.2d 1362 (S.D. Ga. 2002), aff'd, 90 Fed. Appx. 386 (11th Cir. 2003). In The Gay, a local public library decided to ban all non-library and non-government publications from its front lobby rather than be forced to place a gay-advocacy newspaper in the lobby. The court held that the library could close the limited forum in the library's lobby to all private newspapers. 235 F.Supp.2d at 1373-79. The court considered plaintiff's allegation that the forum closure was motivated by the library's decision to avoid distributing

39

copies of _The Gay Guardian_ in the library's lobby. Id. at 1374-75. The court deemed that motive – even an impermissibly censorious motive arising from a religiously driven, anti-gay bias – was irrelevant provided the restriction was facially neutral. Id. at 1375 ("Absent any evidence that a facially neutral closure (or partial closure) policy bears the _effect_ (in contrast to intent) of singling out an 'unwanted' speaker, this Court holds that it is not [legally relevant.") [emphasis in original]. The court concluded: "Because the Library's forum closing equally affects both gay and non-gay interests -- including Sons of Confederate veterans who might also wish to distribute their own free literature -- the Court concludes that plaintiffs likely will not prevail on the merits of their First Amendment claim, which is a prerequisite to obtaining injunctive relief." Id. at 1377 [citations omitted]. See also Occupy Columbia v. Haley, 2011 U.S. Dist. LEXIS 147630, *15, 2011 WL 6698990 (D.S.C. Dec. 22, 2011) (unpublished) ("Courts are not in the business of evaluating motives of legislators in evaluating time, place, and manner restrictions.") [citations omitted].

The Flag Ordinance does not single out any "unwanted" speaker. It applies equally to all citizens and citizen groups, including the few entities alleged to have received permission in the past to use the flag standards. There is no allegation, nor could there be, that the Flag Ordinance has a discriminatory effect on SCV or is applied differently to SCV than other private entities. Indeed, as the district court

concluded, no such allegation would "be contextually plausible." (App. 39 n.3). When reviewing a reasonable and facially neutral ordinance that has no discriminatory effect, such as the Flag Ordinance, whatever subjective motivation any individual had in voting for (or against) the ordinance is irrelevant.

Judicial decisions cited by SCV do not alter this analysis. Student Gov't Ass'n v. Bd. of Trustees of Univ. of Massachusetts, 868 F.2d 473 (1st Cir. 1989), for example, is not a forum analysis decision. Id. at 476, 480. The language quoted by SCV is pure *dictum* derived from a law review article. Id. at 480. The same constitutional commentator quoted by the court in *Student Gov't Association* wrote the following in another law review article: "[A] facially neutral government action that does not in fact . . . violate anyone's constitutional rights or any constitutional principle . . . should not be rendered unconstitutional, or even suspect, just by virtue of the factors considered by, or the attitudes or intentions held by, the public officials responsible for that action . . . ." See *Grossbaum*, 100 F.3d at 1299 (citing Laurence H. Tribe, *The Mystery of Motive, Private and Public: Some Notes Inspired by the Problems of Hate Crime and Animal Sacrifice*, 1993 Sup. Ct. Rev. 1, 28-29).

In Act-Up v. Walp, 755 F. Supp. 1281 (M.D. Pa. 1991), the forum at issue was the chamber of the Pennsylvania House of Representatives. The chamber's gallery was temporarily closed for the duration of one speech by the governor. The

41

temporary closure had the effect of excluding one specific group of protesters (who recently had been protesting the governor) from attending the speech. In reaching its decision, the court also emphasized the significance of closing the gallery of the Pennsylvania House of Representatives, the very seat of political power in the Commonwealth. Id. at 1288. For these reasons, among others, the court in *The Gay* had little trouble limiting *Act-Up* to its facts. 235 F.Supp.2d at 1378.

Missouri Knights of the Ku Klux Klan v. Kansas City, Missouri, 723 F. Supp. 1347 (W.D. Mo. 1989), also provides no support for SCV's position. Unlike the case at bar, *Missouri Knights* did not involve the complete closure of a forum. Other cable channels remained on the air, and the KKK alleged that the cable-provider intended to show non-objectionable public access programming on other channels. Id. at 1350. Citing *O'Brien*, the district court also acknowledged that "[l]egislative motive . . . is irrelevant and will not be grounds to invalidate an otherwise constitutional law or resolution." Id. at 1352 (citing *O'Brien*, 391 U.S. at 367).

Joyner v. Williams, 477 F.2d 456 (4th Cir. 1973), centered on the actions of a college president rather than a legislative body. Id. at 459-60. Thus, it involved the type of executive action that this Court recently distinguished from legislative action in *Kensington*. 684 F.3d at 468. *Joyner* also applied a separate, "well established body of law dealing with censorship of college newspapers." Id. at 461.

42

Church of the Lukumi Babalu v. City of Hialeah, 508 U.S. 520 (1993), is not a free speech decision. As noted by the district court, motive inquiries may be relevant in some instances, such as Equal Protection Clause and Establishment Clause cases. (App. 39 n.3). *Lukumi* merely recognized that motivation also could be relevant to Free Exercise Clause claims. 508 U.S. at 532-33. Likewise, Crawford v. Board of Educ. of City of Los Angeles, 458 U.S. 527 (1982), is an Equal Protection Clause case in which motivation may be relevant. Neither *Lukumi* nor *Crawford* supports extending a motivation inquiry to a free speech challenge when the ordinance at issue is reasonable, facially neutral, and does not have any discriminatory effect. See also *Grossbaum*, 100 F.3d at 1292-93 (discussing the different treatment of motive in the context of Equal Protection Clause and Establishment Clause cases).

Even if motive were proper for exploration, the district court correctly found that the allegations in SCV's complaint are insufficient to give rise to a plausible claim of invidious motivation. (App. 42 n.5). In the district court's words: "[t]he facts in SCV's complaint show that the City has allowed several groups (including SCV) to fly private flags from city-owned flag poles. That SCV was the last group in a line of several to get the City's permission to fly its flags, that a councilman who voted against SCV's application moved City Council to establish a flag policy, or that private citizens spoke out against City approbation of the Confederate flag, does not render plausible the theory that the City sought to

43

silence SCV's message by enacting § 420-205." (App. 42 n.5). Thus, under *Iqbal*

and *Twombly*, even if SCV were correct that a motivation inquiry is necessary,

dismissal nonetheless would remain appropriate.

In sum, even if SCV could avoid both application of the government speech

doctrine and the fact that the flag standards are, at most, nonpublic fora, the City

would remain entitled to close the fora through enactment of the Flag Ordinance.

Accordingly, the district court's dismissal of Count II should be affirmed.

## II.    THE DISTRICT COURT CORRECTLY HELD THAT THE CITY'S FACIALLY NEUTRAL FLAG ORDINANCE DOES NOT VIOLATE THE DISTRICT COURT'S 1993 CONSENT DECREE.

To establish civil contempt, a movant must show each of the following

elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and (4) . . . that [the] movant suffered harm as a result.

JTH Tax, Inc. v. H&R Block E. Tax Servs., 359 F.3d 699, 705 (4th Cir. 2004)

(quoting Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000)). While the

parties agree on the four-part test for analyzing SCV's civil contempt claim (SCV's

44

Opening Brief at 23), they disagree on the application of three of those four prongs to SCV's allegations.[3]

First, the Consent Decree was part of a negotiated settlement (App. 14-15). Absent from the Consent Decree is any finding that the City violated SCV's or its members' constitutional rights, a charge which the City denied at the time and continues to deny.[4] The Consent Decree does nothing more than restate the law as it existed at the time and enjoin the City from violating those established rights. See Lefemine v. Wideman, 672 F.3d 292, 302-03 (4th Cir. 2012) (noting that entry of an order, even one finding a violation of civil rights, does not necessarily render the plaintiff a prevailing party if the order does not alter the relative positions of the parties) [citations omitted]. Therefore, the Consent Decree was not in SCV's favor for purposes of this civil contempt claim.

For many of the same reasons that the Flag Ordinance does not violate the First Amendment, it also does not violate the Consent Decree. Indeed, the Flag Ordinance is consistent with both the purpose and plain language of the Consent Decree.

---

[3] The parties agree that the Consent Decree was a valid decree of which the parties had knowledge.

[4] Those who allegedly deprived SCV and its members of their constitutional rights as alleged in the Prior Action were neither City employees nor City agents.

45

As the Complaint from the Prior Action and the Consent Decree make clear, the Prior Action was about the rights of individual members of SCV to display the Confederate flag as they marched in parades or gathered in a cemetery. The Prior Action did not entail any allegations about hoisting flags onto City-owned flag standards. The purpose of the Consent Decree was to reaffirm those individual rights to display Confederate flags in traditional public fora. The present controversy lies well outside the scope of the Consent Decree. Unlike the Prior Action, the pending appeal concerns SCV's demands for access to City-owned flag standards, which clearly are not traditional public fora. Indeed, SCV does not even contend the flag standards are traditional public fora. The Flag Ordinance is, therefore, consistent with the purpose of the Consent Decree.

The Flag Ordinance also does not violate the plain language of the Consent Decree. Under the Consent Decree, the City is enjoined from "deny[ing] or abridge[ing] the right" of SCV or its members ". . . to wear, carry, display or show" the Confederate flag ". . . at any . . . place or event which is to any extent given over to private expressive activity, . . . ." (App. 15 at § 1). The "right" to which the Court refers in the prohibitory injunction is SCV's rights under the Free Speech Clause of the First Amendment to the United States Constitution. This is clear from the opening paragraph of the Consent Decree, where the Court recounts that SCV filed the Prior Action to seek relief ". . . for the alleged abridgment of the freedom of speech . . . ."

46

(App. 14)  The only "right" protected by the injunction imbedded in the Consent Decree is the First Amendment right to free speech.

SCV claims that the Consent Decree affords it greater flag waving rights in Lexington than those enjoyed by other citizens. Even if the Flag Ordinance is constitutional, SCV claims it should be permitted to fly flags of the Confederacy from City flag poles. (SCV's Opening Brief at 25-26). The Consent Decree provides rights and protections which are co-extensive with the Free Speech Clause. The Consent Decree is a judicial declaration that carrying the Confederate flag in traditional public fora is protected expression under the Free Speech Clause. The Consent Decree does not grant SCV any additional rights beyond those enjoyed by other citizen groups interested in carrying Confederate flags in Lexington. The Consent Decree contains a prohibitory injunction that enforces existing rights. See Lefemine, 672 F.3d at 303 (noting that district court in that First Amendment case had entered an injunction ordering defendants to comply with the law and safeguard the plaintiff's constitutional rights in the future) [citation omitted]. In the case at bar, the same court that entered the Consent Decree in 1993 concluded that there could be no violation of the Consent Decree in the absence of a violation of SCV's First Amendment right to free speech. (App. 43 at § III).[5]

---

[5] The Honorable Samuel G. Wilson was the Judge who entered the Consent Decree in 1993. The fact that he has now interpreted the Consent Decree as not affording

47

The Consent Decree by its terms applies only when SCV carries, displays or shows the Confederate flag at a "government-sponsored or government-controlled place or event which is to any extent given over to private expressive activity." (App. 15 at § 1). While the flag standards are "government-controlled," they are not "given over to private expressive activity." Id. Just the opposite is true. The Flag Ordinance makes it clear that only the City may engage in expressive activity from the City-owned flag standards, and only in the form of the three governmental flags. Non-municipal organizations are banned from flying flags of any kind from the City's standards.

SCV has no right under the First Amendment to compel the City to fly the Confederate flag from City-owned flag standards affixed to light poles. The Flag Ordinance is constitutional. SCV therefore cannot demonstrate that the Flag Ordinance violates its co-extensive "right" to free speech under the Consent Decree.

As for the fourth prong of the civil contempt test, because the enactment of the Flag Ordinance does not violate the Consent Decree or abridge SCV's constitutional rights, SCV has not been harmed.

The Flag Ordinance is consistent with both the purpose and language of the Consent Decree. The Prior Action concerned an alleged deprivation of the rights of

---

SCV rights that exceed those afforded by the First Amendment should be given deference.

48

individual SCV members to carry flags in traditional public fora. The Prior Action did not involve the City's right to control the flags it chooses to fly from its own flag standards. The Consent Decree neither limits government speech nor prohibits the City from constitutionally closing any nonpublic or public fora. If the Consent Decree had limited the City in this way, it would have afforded SCV broader, judicially-created rights than the First Amendment protections guaranteed all citizens. Nothing in the Consent Decree suggests the district court intended to grant SCV such judicially-enhanced rights. The Consent Decree does not empower SCV to compel the City to fly SCV's preferred flags on City-owned flag standards. In sum, the Consent Decree has not been violated.

## CONCLUSION

For the foregoing reasons, the Court should affirm the decision of the district court.

Respectfully submitted,

/s/ Jeremy E. Carroll
Jeremy E. Carroll

49

Jeremy E. Carroll (VSB # 41331)
E-mail: jcarroll@gfdg.com
Paul G. Beers (VSB # 26725)
E-mail: pbeers@gfdg.com
Glenn, Feldmann, Darby & Goodlatte
37 Campbell Avenue, S.W.
P. O. Box 2887
Roanoke, Virginia 24001-2887
Telephone (540) 224-8000
Facsimile (540) 224-8050

Counsel for Appellants

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) OR 32(a)</u>

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 11,998 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14 point Times New Roman.

<u>/s/ Jeremy E. Carroll</u>
Jeremy E. Carroll
Dated:  September 24, 2012

51

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of September, 2012, the foregoing Brief of Appellees was electronically filed with the United States Court of Appeals for the Fourth Circuit using the CM/ECF system which will send notice of such filing the following registered CM/ECF users:

Thomas Eugene Strelka
STRICKLAND, DIVINEY & STRELKA
23 Franklin Road
Roanoke, Virginia 24001
thomas@strelkalaw.com

Douglas R. McKusick
THE RUTHERFORD INSTITUTE
Post Office Box 7482
Charlottesville, Virginia 22906-7482
douglasm@rutherford.com

*Counsel for Appellant*

I further certify that on this 24th day of September, 2012, I caused the required number of bound copies of this Brief of Appellees to be hand-filed with the Clerk of this Court.

/s/ Jeremy E. Carroll
Jeremy E. Carroll